IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:21-CV-140-GCM-DCK

| | |
|---|---|
| JEFFREY EDWARDS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **MEMORANDUM AND** ) **RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY | ) ) ) |
| Defendant. | ) ) ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Defendant's Motion For Summary Judgment" (Document No. 15). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

## I. BACKGROUND

Plaintiff Jeffrey Edwards ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on or about August 7, 2019, under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning May 31, 2019. (Transcript of the Record of Proceedings ("Tr.") 20). The ALJ noted that Plaintiff's earnings record shows that he "has acquired sufficient quarters of coverage to remain insured through December 31, 2024 . . . and

must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." (Tr. 21, 22).

The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about December 19, 2019, and again after reconsideration on or about February 21, 2020. (Tr. 20, 109, 120). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> On your application you stated that you are disabled because of fractured ankles and heels.
> The medical evidence shows that your condition will not remain severe enough for 12 continuous months to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary emotional stresses without significant difficulties. Although the condition is severe, it is not expected to remain disabling for at least twelve continuous months as the law requires. We realize that your condition will keep you from doing any of your past jobs, but it will not keep you from doing less demanding work. Based on your age, education, and past work experience, you will be able to do other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 120).

Plaintiff filed a timely written request for a hearing on or about March 6, 2020. (Tr. 20, 128). On August 4, 2020, Plaintiff appeared and testified at a telephone hearing before Administrative Law Judge John A. Pottinger (the "ALJ"). (Tr. 20, 39-77). In addition, Janette Clifford, a vocational expert ("VE"), and Holly Fairbairn, Plaintiff's attorney representative, appeared at the hearing. Id. Plaintiff's wife, Shannon Edwards also testified during the hearing. Id.

The ALJ issued an unfavorable decision on November 4, 2020, denying Plaintiff's claim. (Tr. 20-33). On January 6, 2021, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on February 22, 2021. (Tr. 172, 11). The ALJ's decision

2

became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 11).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 21, 2021. (Document No. 1). On June 8, 2021, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 13) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No.14) were filed January 19, 2022; and "Defendant's Motion For Summary Judgment" (Document No. 15) and "Memorandum Of Law In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 16) were filed February 10, 2022.

"Plaintiff's Response To Defendant's Memorandum In Support Of Motion For Judgment On The Pleadings" (Document No. 17) was filed on February 24, 2022; and "Defendant's Sur-Reply (Document No. 20) was filed on March 31, 2022. On September 21, 2022, Plaintiff filed a "Notice Of Withdrawal Of Argument" (Document No. 22) regarding his "constitutional challenge" to the ALJ's decision.

The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Graham C. Mullen is now appropriate.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between May 31, 2019, and the date of the ALJ's

decision.[1] (Tr. 21). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and
>
> (5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps; if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy. Pass, 65 F.3d at

---

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

5

1203. In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 32-33).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since May 31, 2019, the alleged disability onset date. (Tr. 23). At the second step, the ALJ found that "status post bilateral fractures of the lower extremities; adjustment disorder with anxiety and depressed mood; anxiety disorder; panic disorder; and posttraumatic stress disorder (PTSD)" were severe impairments.[2] (Tr. 23). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. Id.

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform sedentary work activity, with the following limitations:

> can balance, stoop, kneel, crouch, and crawl occasionally; no climbing of ladders, ropes, or scaffolds; should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards; can perform simple tasks with customary breaks; and can have occasional interaction with the general public and frequent interaction with coworkers and supervisors.

(Tr. 25). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." Id.

At the fourth step, the ALJ held that Plaintiff could not perform past relevant work as an elevator constructor or elevator repairer. (Tr. 31). The ALJ then noted that Plaintiff was 47 years

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

6

old on the alleged disability onset date, "which is defined as a younger individual.' (Tr. 32) (citing 20 CFR 404.1563).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 32). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included inspector, assembler light fixtures, and final assembler. (Tr. 32). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between May 31, 2019, and the date of the decision, November 4, 2020. (Tr. 33).

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following errors: (1) the RFC is inadequate; (2) the structure of the Social Security Administration ("SSA") is constitutionally invalid; and (3) the ALJ in this case was not constitutionally appointed. (Document No. 14, pp. 4-25). As noted above, Plaintiff has subsequently elected "to withdraw his constitutional challenge." (Document No. 22). Based on Plaintiff's withdrawal of the constitutional argument(s) the undersigned will only discuss Plaintiff's alleged RFC error.

**ALJ's RFC Finding**

In the remaining assignment of error, Plaintiff argues that the ALJ failed to either include an accommodation for foot elevation in the RFC or explain why one was not necessary. (Document No. 14, pp. 4-10). Plaintiff contends that there is significant support in the medical evidence of record for his "need to elevate his lower extremities." (Document No. 14, p. 5) (citing Tr. 285, 292, 433, 456-57, 460, 481, 845, 1248, 1253, 1256, 1270, 1297, 1322).

Plaintiff acknowledges that by late October 2019, there was "good improvement" of his edema. (Document No. 14, pp. 5-6) (citing Tr. 573, 578). He was advised to wear knee high

compression socks to help manage the edema in his right lower extremity. (Document No. 14, p. 6) (citing Tr. 588). As of April 2020, Plaintiff complained that with walking and/or without wearing compression socks, his leg would swell. Id. (citing Tr. 1474).

Plaintiff had hardware removed from his leg on or about June 12, 2020, and following the surgery was "instructed to elevate the limb as needed." Id. (citing Tr. 1506). Later in June 2020, Dr. Brandan Adcock opined that Plaintiff should prop up or elevate his feet due to swelling and pain. Id. (citing Tr. 1491).

Plaintiff complains that despite the foregoing evidence "the ALJ did not include an accommodation for foot elevation in the RFC," nor did he "explain why this limitation was not needed." (Document No. 14, p. 6). Plaintiff contends that the ALJ must perform an explicit analysis of his purported need to elevate his feet. (Document No. 14, pp. 6-7) (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) and Dowling v. Commissioner of Social Security, 986 F.3d 377, 388-89 (4th Cir. 2021)). Plaintiff argues that when this Court has been presented with similar facts it has held that remand is required. (Document No. 14, p. 8) (citing Hunter-Tedder v. Berryhill, No. 5:17-CV-53-MOC, 2017 WL 5759941, at *3 (W.D.N.C. Nov. 28, 2017); Mays v. Saul, No. 3:19-CV-692-MOC-WCM, 2020 WL 6694309, at *3 (W.D.N.C. Oct. 20, 2020); and Hall v. Berryhill, No. 3:17-CV-285-MOC, 2018 WL 1463702, at *3 (W.D.N.C. Mar. 23, 2018)).

Plaintiff acknowledges that the ALJ discussed Plaintiff's need to elevate his feet in the context of summarizing the hearing testimony and regarding the opinion of Dr. Brandon Adcock, but argues that this analysis was insufficient. (Document No. 14, p. 9) (citing Tr. 26, 27, 30).

In conclusion, Plaintiff asserts that "the ALJ notably failed to discuss the significant evidence of swelling discussed herein" and that his "need to elevate his legs is likely disabling." (Document No. 14, p. 10) (citing Tr. 72-74).

8

In response, Defendant argues that the ALJ's RFC is supported by substantial evidence. (Document No. 16, pp. 17-22). Defendant first asserts that the medical records support the ALJ's RFC. (Document No. 16, pp. 18-20). According to Defendant, the ALJ noted evidence in the record of Plaintiff's leg swelling; however, the medical record also indicates that wearing compression socks prevents Plaintiff's leg swelling. (Document No. 16, p. 18) (citing 25, 64, 1474). Defendant further asserts that "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." Id. (quoting Purdham v. Celebreeze, 349 F2d 828, 830 (4th Cir. 1965)).

Defendant observes that in the months immediately after Plaintiff's "traumatic fall from a rock formation" he received instruction to elevate his legs, but following surgery in October 2019 to remove some hardware and care for a heel wound, he was advised he could begin weight bearing in one week and then wear a compression sock. (Document No. 16, pp. 18-19) (citing Tr. 502-03). Defendant further observes that "[n]o instruction was given to elevate his feet" and it "appears that since this corrective surgery no foot elevation was required." (Document No. 16, p. 19).

Defendant goes on to cite treatment and medical appointments in November 2019 and May, June, and July 2020, where no mention was made of foot/leg elevation and Plaintiff showed signs of improvement. Id. (citing Tr. 588, 1435, 1504, 1524). For example, Plaintiff reported walking around his neighborhood, and noted that with compression socks he was "able to lift and carry weight without difficulty." Id. Defendant contends that no foot elevation was prescribed since Plaintiff's surgery in October 2019. (Document No. 16, p. 20).

Next, Defendant argues that the ALJ properly discounted Dr. Adcock's opinion. (Document No. 16, p. 20). Defendant notes that the ALJ recognized that Dr. Adcock stated on June 24, 2020, that Plaintiff "could only walk/stand for 20 minutes total and sit for one hour total

9

with foot elevation necessary to prevent swelling," but that opinion was "given only a few days" after Plaintiff had corrective surgery. Id. (citing Tr. 28, 30, 1499). Moreover, the ALJ found Adcock's limitations unpersuasive because the "limitations are in contradiction with the claimant's records at Exhibit 19F which indicate around the same time that the claimant described walking significant distances." Id. (citing Tr. 30) (citing Tr. 1502-1511).

Finally, Defendant argues that relevant legal authority supports the ALJ's assessment of RFC. (Document No. 16, pp. 21-22) (citations omitted). For example, Defendant notes that the "ALJ is not required to discuss each piece of evidence," and that "it is the claimant's burden to establish how any medically determinable impairments negatively affect[] functioning." Id. Defendant concludes that Plaintiff has failed to meet his burden of establishing the degree to which his impairments limit his RFC. (Document No. 16, p. 22).

In reply, Plaintiff asserts that the ALJ "never performed analysis of this issue" and that "the presence of conflicting evidence does not alleviate the ALJ of his burden to analyze conflicting evidence in the first instance." (Document No. 17, p. 4) (citing Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)). Plaintiff argues that the ALJ's "insufficient legal analysis" supports remand for additional investigation or explanation. Id. (citations omitted).

In addition, Plaintiff suggests that Defendant incorrectly asserted that he had not required leg elevations since October 2019. (Document No. 17, pp. 4-5) (citing Tr. 1491, 1506).

The undersigned observes, as noted above, that on May 31, 2019, Plaintiff had "a fall from significant height" while hiking in Seattle that resulted in "devastating bilateral ankle and heel injuries." (Tr. 1504-05). Plaintiff testified that he spent a month in the hospital in Seattle and has had seven (7) surgeries related to the injuries he sustained from the fall. (Tr. 52). He then spent

three and a half (3 ½) to four and a half (4 ½) months in a wheelchair and began "a slow progression of physical therapy" after his sixth surgery. Id.

Just over two (2) months after Plaintiff's fall, he filed the underlying application for disability benefits. See (Tr. 20). Within nine (9) months of the alleged disability onset date, the SSA twice considered Plaintiff's disability application and determined that Plaintiff's condition is not expected to "remain severe enough for 12 continuous months to be considered disabling" and that while his injuries would keep him from doing his past jobs, he would be capable of less demanding work. (Tr. 109, 120). In affirming the SSA, the ALJ agreed that Plaintiff could not perform his past relevant work but could perform other work. (Tr. 31-32).

In short, the undersigned finds that the ALJ's decision is supported by substantial evidence. The undersigned is not persuaded that the RFC is deficient, or that this matter must be remanded.

The undersigned notes that Plaintiff's final argument appears to be correct that Defendant misstated that Plaintiff was not prescribed foot elevation after his October 2019 surgery; however, Plaintiff's position is somewhat misleading. (Document No. 17, p. 5). The reference to prescribed elevation on June 24, 2020, was soon after an additional surgery to remove hardware from Plaintiff's right ankle on or about June 12, 2024. See (Tr. 1491, 1506); see also (Document No. 16, p. 20) (citing Tr. 30). For context, it is appropriate to note that Plaintiff's surgeon, Thomas Large, stated the following on or about June 12, 2020, in his post operative report:

> The patient will be discharged home. He will use a cane or crutch or his boot for about 3 days and gradually increase back to normal activities and full weightbearing next week. He will be **elevating his limb as needed**.

(Tr. 1506) (emphasis added).

In an earlier report on or about June 1, 2020, discussed in detail by the ALJ, Dr. Large noted that Plaintiff's

11

> function had been fairly static up until early April, he was walking about 1 mile, sometimes longer with his walking stick and he began having more severe pain in the anterolateral left ankle region. This did eventually improve over the course of 5 days of restricted activities. He is back up to doing just about a third of a mile or so walking . . . He has some new orthotics that seem to have improved things. He does not use an ankle brace. He has compression socks.

(Tr. 1504); see also (Tr. 26-27).

Dr. Large further opined that Plaintiff's recent flareup of ankle pain was likely "mild posttraumatic arthritis," but that Plaintiff had "near complete resolution of his pain" after injections. Id.

The ALJ's decision observes that Dr. Large's treatment notes "document Plaintiff's improvement as of June 1, 2020, following his accident 12 months prior in May 20[19] and do not indicate that the claimant required the use of an assistive device for ambulation." (Tr. 27). Moreover, the ALJ opined that the "evidence shows that he is able to move about and use his arms, hands, and legs in a satisfactory manner **within the assigned residual functional capacity**." Id. (citing 284-334, 335-367, 368-446, 472-487, 488-519, 520-530, 531-544, 545-637, 649-877, 878-1237, 1238-1243, 1244-1447, 1502-1511) (emphasis added).

In addition, as argued by Defendant, it appears that the ALJ adequately addressed Dr. Adcock's opinion, including Adcock's advice twelve (12) days after Dr. Large had removed hardware and deep implants from his right ankle, that Plaintiff prop up or elevate his feet "due to swelling and pain." (Tr. 27, 30).

The ALJ decision also notes that "the State agency physicians found in December 2019 and February 2020 that the **claimant could perform light work**." (Tr. 28) (citing Tr. 78-88, 90-104) (emphasis added). Of course, the ALJ ultimately determined that Plaintiff's limitations were more restrictive and that he should be limited to sedentary work. (Tr. 32).

12

The undersigned is persuaded that the ALJ considered the relevant medical evidence, as well as Plaintiff's wife's testimony, regarding his injuries and subsequent edema/swelling. The ALJ recognized that Plaintiff had made "significant improvement in his symptoms" that was attributed, at least in part, to successful treatment with compression socks and injections. Consistent with Defendant's arguments, the record and the ALJ decision suggest that most, if not all, of Plaintiff's difficulty with swelling and prescribed elevation of his feet occurred in the weeks and months immediately following his traumatic fall, and following surgical procedures. It does not appear that Plaintiff has met his burden of showing that this condition is expected to last continuously for twelve (12) months or more, and is therefore, disabling.

It is undisputed that Plaintiff suffered a terrible accident and has faced a long road to recovery. However, the ALJ relied on substantial evidence showing that as of November 4, 2020, Plaintiff's condition was continuing to improve and respond to treatment. Under these circumstances, the undersigned is not convinced that the ALJ has committed any error that requires reversal or remand.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: on Plaintiff's "Motion For Summary Judgment" (Document No. 13) be **DENIED**; the

"Defendant's Motion For Summary Judgment" (Document No. 15) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: June 8, 2023

David C. Keesler
United States Magistrate Judge